IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ RECEIVED
_____ LODGED _____

OCT 1 4 2016

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| WILLIAM E. ALTON, III | * | |
| Plaintiff | * | |
| v | * | Civil Action No. WMN-15-804 |
| MARYLAND DEPT. OF PUBLIC SAFETY, *<br>  *et al.* | | |
| | * | |
| Defendants | | |
| | *** | |

## MEMORANDUM

On March 10, 2016, this Court issued a Memorandum and Order in the above-captioned civil rights case directing Defendants to respond to the claim that Plaintiff was denied access to certain programs in violation of the Rehabilitation Act and the Americans with Disabilities Act (ADA). ECF 28 and 29. Defendants filed the required Supplemental Motion for Summary Judgment[1] (ECF 33) and Plaintiff has filed his opposition to the motion (ECF 34 and 35). No hearing is deemed necessary for the disposition of the matters pending. *See* Local Rule 105.6 (D. Md. 2016).

### Background

In its prior decision, this Court observed that:

> Defendants do not dispute, and the records submitted support the fact, that Alton suffers from Brown Sequard syndrome, requiring him to walk with crutches and wear braces on his legs. In addition, there is acknowledgment that Alton required accommodations for his disability such as assignment to a lower bunk and assistance with walking long distances or negotiating stairs. The medical record also supports a finding that Alton suffers a chronic pain condition emanating from spinal disc disorders. *See generally* ECF 20 at Ex.

---

[1] Defendants' Motion for Extension of Time (ECF 32) shall be granted.

11. Alton is a disabled person entitled to the protections provided under the
ADA.
Title II of the ADA also applies to Alton's participation in the [Addictions
Treatment Protocol (ATP)], work release, and any diminution of confinement
credits he may have been entitled to by virtue of his participation.

It is undisputed that Alton could not participate in a program [Department of
Public Safety and Correctional Services (DPSCS)] designated as "mandatory"
at a facility that was also a pre-release prison. What remains unclear, because
Defendants have not addressed it, is whether Alton was denied the opportunity
to participate in yet another program, work release, because of his disability
and whether Alton was then denied the benefit of earning additional
diminution of confinement credits because of his disability. Defendants have
only addressed Alton's claim under the ADA and the Rehabilitation Act in
terms of the medical care he received. A fair reading of the Complaint does
not lead this Court to the conclusion that he was raising that claim.

Moreover, the mere fact that Alton was not constitutionally entitled to
participate in prison programs or to earn the benefits derived therefrom, *i.e.*,
diminution of confinement credits, is not dispositive of his claim under Title II
of the ADA or the Rehabilitation Act. Alton has alleged that DPSCS receives
federal funding for its ATP program, bringing participation in that program
within the ambit of the Rehabilitation Act's protection.

Under 29 U.S.C. §794(b) a "program or activity" from which a disabled
person may not be excluded solely on the basis of that disability is defined as
follows:

> [A]ll of the operations of—
>
> (1)(A) a department, agency, special purpose district, or other
> instrumentality of a State or of a local government; or
>
> (B) the entity of such State or local government that distributes such
> assistance and each such department or agency (and each other State
> or local government entity) to which the assistance is extended, in the
> case of assistance to a *State or local government . . . any part of which
> is extended Federal financial assistance.*

*Id.* (emphasis supplied). Thus, the DPSCS is subject to the proscriptions of the
Rehabilitation Act if there is evidence the department receives federal financial
assistance. While Alton has not produced any evidence that the Maryland
DPSCS receives federal funding for the ATP, Defendants have offered nothing
to refute that allegation and the record is currently devoid of evidence upon
which this Court may rely to determine if the Rehabilitation Act even applies
to Alton's claim regarding the ATP. The record does not, however, support a

conclusion that Alton was excluded from participation in the ATP solely because of his disability. Alton participated in the ATP; albeit his participation was delayed by efforts to locate him in a prison where it was offered and in which he could be accommodated for his disability. What remains unclear, however, is whether Alton was excluded from participation in work release solely because of his disability and thereby excluded from receipt of diminution of confinement credits, or if his assignment as a tutor garnered the same or similar benefits as a work release assignment. Summary judgment must be denied on Alton's ADA and Rehabilitation Act claims.

While it is true, as Defendants assert, that denial of medical care alone is not enough to establish a violation of the ADA,[2] Alton's claim appears to differ from the claims asserting denial of access to specific medical care. A fair construction of the claims raised by Alton, both in the Complaint filed in this Court and his ARPs, is that he was denied access to medical care because he could not walk the distance required to get to the area of the prison where medical care was provided. Alton raised this claim with respect to his confinement at [Brockridge Correctional Facility (BBCF)] and [Roxbury Correctional Institution (RCI)]. Defendants have not addressed this claim, therefore, summary judgment must be denied.

ECF 28 at pp. 19 – 22. The remaining claims raised by Plaintiff were dismissed on summary

judgment.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will

defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[2]     *See, e.g. Miller v. Hinton,* 288 Fed. Appx. 901 (4th Cir. 2008) (prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); *Spencer v. Easter,* 109 Fed. Appx. 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability).

> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Rehabilitation Act Claim

In the Supplemental Motion for Summary Judgment Defendants provide a declaration under oath stating that the ATP program is not federally funded, nor is it run by an outside contractor. ECF 33 at Ex. 5. No other evidence is provided with regard to funding sources for the ATP. Defendants maintain that the Rehabilitation Act does not apply to the ATP because of the lack of federal funding.

Plaintiff asserts in opposition that "any program or service that is part of the Division of Correction (DOC) or DPSCS receives federal financial assistance as a 'public entity' defined

4

under 42 U.S.C.A. §§12132; 12131(1)(B); 29 U.S.C.A. §794(b)(1)(A)." ECF 34 at p. 3. As

such, Plaintiff argues that the Rehabilitation Act applies to his access to programs.

The language relied upon by Plaintiff is found in the ADA, not the Rehabilitation Act.

As previously noted, the two provisions differ. "Unlike the ADA, which Congress intended to

apply generally to the States and private employers, §504 of the Rehabilitation Act applies 'only

to those agencies or departments receiving federal funds, and §504 applies only during the

periods during which the funds are accepted.'" *Nelson v. Com. Of Pennsylvania Dept. of Public

Works*, 244 F. Supp.2d 382, 389 (E.D. Pa. 2002) quoting *Kaslow v. Com. Of Pennsylvania*, 302

F.3d 161, 166 (3d Cir. 2002). Based on the affidavit provided by Defendants stating that the

ATP does not receive federal assistance for its implementation or service of the program, the

protections of the Act do not apply to the claim raised.

ADA Claim

Plaintiff's claim under the ADA concerns his exclusion from programming, and the

benefits inuring therefrom, based on his disability. Defendants were directed to address this

claim and now state that Plaintiff was not placed in the work release program because he was not

eligible for work release. ECF 33 at Ex. 1, p. 3. Defendants appear to base his ineligibility on

the fact that Plaintiff was recommended for substance abuse programming. *Id.* at ¶17. They

provide the guidelines for work release placement, which provides a list of prerequisites for work

release participation. Those prerequisites include, "[a]n inmate who has been assessed and

recommended for substance abuse programming shall have completed the requirement during

the current incarceration." ECF 33 at Ex. 2, p. 3 (DCM 100.0002.I.2). That portion of the

prerequisites also permits the substance abuse programming to be waived if the program is

unavailable prior to the inmate's release date and allows for work release inmates to participate in the programming if available while on work release. *Id.*

Defendants further assert that the institutional job assignments held by Plaintiff in lieu of a work release job, earned him the same amount of diminution of confinement credits as he would have earned if he had been placed in a work release job.[3] ECF 33 at Ex. 1, p. 3. Thus, Defendants appear to rely on the fact that Plaintiff was not otherwise qualified for the benefit in question and that he was not excluded from the benefit due to discrimination based upon his disability. In addition, Defendants assert that every effort was made to accommodate Plaintiff's disability while he was confined at BCF and RCI. ECF 33 at Ex. 4 and 6.

A brief review of the events surrounding Plaintiff's multiple transfers clarifies the non-discriminatory motive for failing to keep Plaintiff in a pre-release facility where he could have been eventually considered for work release.[4] It was determined that Plaintiff was eligible for mandatory completion of the ATP and to accommodate his participation, he was transferred to BCF from Dorsey Run Correctional Facility (DRCF).[5] Both prisons are a part of the Maryland Correctional Pre-Release System.

Plaintiff disputed his eligibility for the ATP vehemently. *See* ECF 20 at Ex. 6C, pp. 19 – 20, Ex. 6D, pp. 23 – 24 (Administrative Remedy filed by Plaintiff claiming he was forced to sign the eligibility form in violation of his First Amendment right to include a note detailing the basis for his objection). Before Plaintiff could begin the ATP at BCF, he requested another transfer.

---

[3]      Plaintiff's assertions regarding lost opportunity to earn more money or receive job experience as a result of the failure to place him in the work release program is without merit where, as here, he was not denied entry into a program for which he was otherwise eligible. ECF 34 and 35.

[4]      There is no evidence in the record before the Court that Plaintiff was ever considered for  placement in a work release job.

[5]      Plaintiff complained that DRCF, a Maryland Pre-Release facility, was run by "dysfunctional apathetic African staff and that the prisoners housed there were minimum and medium security. ECF 20 at Ex. 3, p. 17.

Although he had assured Defendant Greene that he would not have a problem negotiating the stairs at BCF (*see* ECF 27-1 at p. 10, ECF 20 at Ex. 11, p. 11), Plaintiff based his request for transfer to Patuxent, Hagerstown, or Southern Maryland on his physical impairment. ECF 20 at Ex. 6D, p. 34, *see also* ECF 27-1 at p. 13 (medical order regarding Plaintiff's physical limitations). The first available bed-space at a prison that was both ADA compliant and offered the ATP was RCI. ECF 20 at Ex. 6D, p. 30. The ATP was not available at Southern Maryland Pre-Release Unit (SMPRU), Patuxent, or any other Pre-Release Unit. *Id.* Thus, Plaintiff was transferred to RCI, which is located in Hagerstown, Maryland. *Id.* Despite the immediate accommodation provided when he complained that his housing unit was located too far away from the medical unit at RCI (*see* ECF 33 at Ex. 6), Plaintiff was not satisfied with being housed at the medium security prison, and was transferred to Eastern Correctional Institution – Annex (ECI-A), a pre-release facility.

To the extent that Plaintiff was unable to complete the ATP, making him eligible for work release, the delay in beginning and completing that program appears to be due in large part to his continued insistence for a transfer to a prison of his choice. Nothing in the ADA requires Defendants to accommodate the whims of a disabled inmate simply because he is disabled. Given Plaintiff's vehement objection to mandatory completion of the ATP and his repeated demands for transfer to specific prisons, it is clear that the failure to place him in a work release program was not based on a discriminatory animus. Rather, Plaintiff's failure to complete the ATP, making him eligible for work release placement, was simply due to his dissatisfaction with all efforts to accommodate his disability and the denial of his requests to be sent to a prison of his choice. Those circumstances vitiate his claim under the ADA.

7

Defendants Supplemental Motion for Summary Judgment shall be granted by separate
Order which follows.


                                                       _____/s/_____

                                                       William M. Nickerson

                                                       Senior United States District Judge

Dated: October 14, 2016